**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Tammy Williams, individually and on behalf of all others similarly situated, | : | |
| | : | Case No. 24-cv-11275 |
| Plaintiff, | : | |
| v. | : | |
| McDonald's USA, LLC, | : | **CLASS ACTION COMPLAINT** |
| Defendant. | : | **JURY TRIAL DEMANDED** |

Plaintiff, Tammy Williams (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1. This action seeks to remedy the deceptive and misleading business practices of McDonald's USA, LLC (hereinafter "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's Quarter Pounder Burgers with and without cheese ("Burgers") throughout the state of Nevada and throughout the United States.

2. Defendant has improperly, deceptively, and misleadingly labeled and marketed its Burgers to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its advertising that the Burgers are contaminated with Escherichia coli (E. coli).

3. As described in further detail below, the Burgers contain Escherichia coli (E. coli)[1], which can cause mild to severe gastrointestinal illness.[2] The risk of serious infection is particularly concerning for children under the age of 5 years, adults older than 65, and people with weakened immune systems.[3]

4. Consumers like the Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from known harmful substances, including Escherichia coli (E. coli).

5. Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the fast-food products they purchase will not contain, or risk containing, any knowingly harmful substances that cause severe disease and even be life threatening.

6. Unfortunately for consumers, like Plaintiff, the fast-food Burgers they purchased contain Escherichia coli (E. coli).

7. Defendant is using a marketing and advertising campaign that omits from the advertising that the Burgers contain Escherichia coli (E. coli). Knowing of the presence of Escherichia coli (E. coli) is material to reasonable consumers. The presence of Escherichia coli (E. coli) was solely within the possession of Defendant, and consumers could only obtain such information by sending the products off to a laboratory for extensive testing. This omission leads a reasonable consumer to believe they are not purchasing a product with a known bacterium when in fact they are purchasing a product contaminated with Escherichia coli (E. coli).

8. E. coli is a group of bacteria that can cause infections in your gut (GI tract), urinary tract and other parts of your body.[4]

---

[1] https://www.cdc.gov/ecoli/outbreaks/e-coli-O157.html
[2] https://www.fda.gov/food/foodborne-pathogens/escherichia-coli-e-coli
[3] *Id.*
[4] https://my.clevelandclinic.org/health/diseases/16638-e-coli-infection

9. Some strains can make you sick with watery diarrhea, vomiting and a fever. Shiga toxin-producing E. coli (STEC) is most likely to cause severe illness.[5]

10. Consumers like the Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from harmful known substances, including Escherichia coli (E. coli).

11. Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the fast-food products they purchase will not contain, or risk containing, any knowingly harmful substances that cause disease.

12. Unfortunately for consumers, like Plaintiff, the fast-food Burgers they purchased contained, or were at risk of containing, Escherichia coli (E. coli).

13. Defendant obtains its slivered onions from Taylor Farms, which it places on the Burgers. On October 25, 2024, Taylor Farms issued a recall of their onions after finding out that they are or may be contaminated with Escherichia coli (E. coli)(the "Recall").[6]

14. The class action remedy is superior to Taylor Farms' failed recall in every conceivable fashion.

15. Defendant is using a marketing and advertising campaign that omits from the advertising that the Burgers contain Escherichia coli (E. coli). This omission leads a reasonable consumer to believe they are not purchasing a product that contains Escherichia coli (E. coli) when in fact they are purchasing a product contaminated with Escherichia coli (E. coli).

16. Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the advertising itself. As such, a reasonable consumer reviewing Defendant's advertising reasonably believes that they are purchasing products that are safe for oral ingestion and do not contain any harmful ingredients. Indeed, consumers

---

[5] *Id.*
[6] https://www.taylorfarms.com/bug-taylor-farms-colorado-foodservice-voluntary-yellow-onion-recall/

expect the advertising to accurately disclose the presence of such bacteria within the Burgers. Thus, reasonable consumers would not think that Defendant is omitting that the Burgers contain, or are at risk of containing, Escherichia coli (E. coli).

17. Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Burgers do contain, or risk containing, Escherichia coli (E. coli), which is dangerous to one's health and well-being. Nevertheless, Defendant does not list or mention Escherichia coli (E. coli) anywhere on the Burgers advertising.

18. Defendant's misrepresentations and omissions of the safety of the Burgers and what is on the Burgers was material to Plaintiff and Class Members Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received were fast food products contaminated with Escherichia coli (E. coli) that is harmful to consumers' health.

19. That is because Defendant's Burgers containing, or at risk of containing Escherichia coli (E. coli), have no value, or at the very least, Defendant was able to charge significantly more for the Burgers than they would have had they not omitted the fact that the Burgers contain (or possibly contain) Escherichia coli (E. coli).

20. As set forth below, fast-food products that contain (or possibly contain) Escherichia coli (E. coli), such as Defendant's Burgers, are in no way safe for human consumption and are entirely worthless.

21. Alternatively, Plaintiff and Class Members paid a price premium for the Burgers based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission. Given that Plaintiff and Class Members paid a premium for the Burgers, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

22. Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, Illinois Consumer Fraud and Deceptive Trade Practices Act, Negligence, and Unjust Enrichment.

23. Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Burgers during the applicable statute of limitations period (the "Class Period").

**FACTUAL BACKGROUND**

24. Defendant markets, advertises, and sells fast food products.

25. Consumers have become increasingly concerned about the effects of ingredients in products that they orally ingest. Companies, such as Defendant, have capitalized on consumers' desire for fast food products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

26. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as Escherichia coli (E. coli), especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Burgers contain or are at risk of containing on the Burgers' advertising.

27. The Burgers' advertising or ingredient list does not identify Escherichia coli (E. coli), nor is there any warning about the inclusion (or even potential inclusion) of Escherichia coli (E. coli) in the Burgers. This leads reasonable consumers to believe the Burgers do not contain, and are not at risk of containing, Escherichia coli (E. coli); however, the Burgers contain, or are at risk of containing, Escherichia coli (E. coli).

28. Defendant is a large and sophisticated corporation that has been in the business of selling, and distributing fast food products for many years, including the contaminated Burgers.

29. Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Burgers and possesses unique and superior knowledge regarding the manufacturing process of the Burgers, the manufacturing process of the ingredients and raw materials the Burgers contain, and the risks associated with those processes, such as the risk of Escherichia coli (E. coli) contamination, as well as the ability to test the Burgers for Escherichia coli (E. coli) contamination prior to releasing the Burgers into the stream of commerce. Such knowledge is solely within the possession of Defendant.

30. Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production of its Burgers. Such knowledge is not readily available to consumers like Plaintiff and Class Members.

31. Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Burgers.

32. Therefore, Defendant's false, misleading, and deceptive omissions regarding the Burgers containing Escherichia coli (E. coli) is likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

33. Defendant's misrepresentations and omissions were material and intentional because people are concerned with what is in the products that they orally ingest. Consumers such as Plaintiff and the Class Members are influenced by the advertising campaign, and the listed ingredients. Defendant knows that if they had not omitted that the Burgers contained Escherichia coli (E. coli), then Plaintiff and the Class would not have purchased the Burgers, or, at the very least, would not have paid nearly as much for the Burgers.

34. Consumers rely on marketing and information in making purchasing decisions.

35. By omitting that the Burgers include Escherichia coli (E. coli) on the advertising of the Burgers throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product that contained Escherichia coli (E. coli).

36. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

37. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

38. In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a product marketed without Escherichia coli (E. coli) over comparable products not so marketed.

39. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

a. Paid a sum of money for Burgers that were not what Defendant represented;

b. Paid a premium price for Burgers that were not what Defendant represented;

c. Were deprived of the benefit of the bargain because the Burgers they purchased was different from what Defendant represented;

d. Were deprived of the benefit of the bargain because the Burgers they purchased had less value than what Defendant represented; and

e. Were denied the benefit of the properties of the Burgers Defendant promised.

42. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same

amount for the Burgers they purchased and/or Plaintiff and the Class Members would not have been willing to purchase the Burgers.

43. Plaintiff and the Class Members paid for Burgers that do not contain Escherichia coli (E. coli). Since the Burgers do indeed or possibly contain Escherichia coli (E. coli), the Burgers Plaintiff and the Class Members received were worth less than the Burgers for which they paid.

44. Plaintiff and the Class Members all paid money for the Burgers; however, Plaintiff and the Class Members did not obtain the full value of the advertised Burgers due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Burgers than they would have had they known the truth about the Burgers. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

45. Plaintiff and Class Members saw the Burgers' advertising prior to purchasing the Burgers. Had Plaintiff and Class Members known the truth about the Burgers, i.e., that they do or possibly contain Escherichia coli (E. coli), they would not have been willing to purchase them at any price, or, at minimum would have paid less for them.

## JURISDICTION AND VENUE

46. This Court has subject jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative Class Member, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendants are citizens of different states.

47. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

48. This Court has personal jurisdiction over Defendant McDonald's USA, LLC because Defendant is headquartered in Illinois and has substantial contacts with Illinois. Defendant also receives substantial benefits and income from Illinois.

49. Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that McDonalds USA, LLC is headquartered in the Northern District of Illinois.

## PARTIES

### Plaintiff

50. Plaintiff is a citizen and resident of Lyon County, Nevada. During the applicable statute of limitations period, Plaintiff purchased and ingested Defendant's Burgers that contained Escherichia coli (E. coli), including the Burgers that were subject to the recall. More specifically, during the Class Period on October 21, 2024, Plaintiff purchased the Burger in Lyon County, Nevada at a McDonalds retail store. Prior to purchasing the Burger, Plaintiff saw the advertising of the Burgers. Three days later Plaintiff felt sick and sought medical attention, where Plaintiff learned that Plaintiff tested positive for E. coli.

51. Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Burgers, Plaintiff would not have been willing to purchase the Burgers or pay as much for the Burgers. Plaintiff purchased, purchased more of, and/or paid more for, the Burgers than she would have had she known the truth about the Burgers. The Burgers Plaintiff received were worthless because they possibly contained Escherichia coli (E. coli). Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

52. Defendant, McDonald's USA, Inc. is an Illinois company with its principal place of business in Chicago, Illinois.

53. Defendant markets, advertises, and distributes the Burgers throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Burgers.

## CLASS ALLEGATIONS

54. Plaintiff brings this matter on behalf of herself and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

55. The Class is defined as all consumers who purchased the Burgers anywhere in the United States during the Class Period.

56. Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Burgers in the state of Nevada at any time during the Class Period (the "Nevada Subclass").

57. The Class and Nevada Subclass are referred to collectively throughout the Complaint as the Class.

58. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

59. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class and the Nevada

Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

60. Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Burgers;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Burgers;

c. Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Burgers;

d. Whether Defendant's false and misleading statements and omissions concerning its Burgers were likely to deceive the public; and

e. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

61. Typicality: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Burgers. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

62. Adequacy: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims

are common to all members of the Class, she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

63. Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

64. Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Burgers.

65. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### COUNT I
### Violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act
### 815 ILCS 505/1, et seq.
### (Plaintiff on Behalf of the National Class)

66. Plaintiff repeats and re-alleges the allegations above as if set forth herein.

67. Plaintiff and other Class Members are persons within the context of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1(c).

68. Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

69. At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

70. Plaintiff and the proposed Class are "consumers" who purchased the Burgers for personal, family or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

71. The ICFA does not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer of this State or the United States." 815 ILCS 505/10b(1).

72. The FDCA prohibits introduction into interstate commerce "of any food, drug, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a).

73. As the Burger is adulterated and misbranded, the FDCA specifically prohibits their introduction into interstate commerce, and thus, actions under the ICFA related to the Burgers being adulterated and misbranded are not barred by 815 ILCS 505/10b(1).

74. The ICFA prohibits engaging in any "unfair or deceptive acts or practices ... in the conduct of any trade or commerce...." ICFA, 815 ILCS 505/2.

75. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2. 215. Plaintiff and the other Class Members reasonably relied upon Defendant's representation that the Burgers were safe for consumption due to Defendant's material representations and omissions.

76. Defendant's corporate headquarters and manufacturing plant are located within the State of Illinois. Accordingly, Defendant's conduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA 505/1, *et seq.*

77. Defendant violated the ICFA by representing that the Burgers have characteristics or benefits that they do not have. 815 ILCS § 505/2; 815 ILCS § 510/2(7).

78. Defendant advertised the Burgers with intent not to sell it as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

79. Defendant engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or of misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

80. Prior to placing the Burgers into the stream of commerce and into the hands of consumers to drink and ingest, Defendant knew or should have known that the Burgers contained Escherichia coli (E. coli), but Defendant failed to properly test check the Burgers for quality and safety.

81. Defendant intended that Plaintiff and each of the other Class Members would reasonably rely upon the misrepresentations, misleading characterizations, warranties and material omissions concerning the true nature of the Burgers.

82. Given Defendant's position as a leader in the fast food industry, Plaintiff and reasonable consumers, trusted and relied on Defendant's representations and omissions regarding the presence of Escherichia coli (E. coli) in the Burgers.

83. Defendant's misrepresentations, concealment, omissions and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff and each of the other Class Members to be deceived about the true nature of the Burgers.

84. Plaintiff and Class Members have been damaged as a proximate result of Defendant's violations of the ICFA and have suffered damages as a direct and proximate result of purchasing the Burgers.

85. As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, Plaintiff and the Class Members have suffered ascertainable losses of money caused by Defendant's misrepresentations and material omissions regarding the presence of Escherichia coli (E. coli) in the Burgers.

86. Had they been aware of the true nature of the Burgers, Plaintiff and Class Members either would have paid less for the Burgers or would not have purchased them at all.

87. Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff and the Class Members are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs and attorney's fees, under 815 ILCS 505/10a.

**COUNT II**
**Negligence**
**(Plaintiff on Behalf of the National Class)**

52. Plaintiff repeats and re-alleges the allegations above as if set forth herein.

53. At all times relevant, Defendant had a duty to provide Plaintiff and the other members of the Nationwide Class with safe Burgers.

54. Specifically, Defendant has a duty to provide the Burgers as safe for human consumption to its potential consumers.

55. Defendant breached this duty by failing to ensure the safety of its Burgers.

56. As a result of Defendant's breach, Plaintiff and the other Class Members were harmed in that they suffered economic injury and lost the benefit of the bargain relating to their purchase price of the Burgers.

57. Defendant's breach of its duty caused Plaintiff's and the other Class Members' damages both proximately and factually.

58. Had Defendant properly designed, manufactured, or implemented a system in which Defendant's Products had been properly examined and tested for prior to sale, Plaintiff and the other Class Members would not have been injured and/or damaged as they would not have purchased contaminated Burgers.

**COUNT III**
**Unjust Enrichment**
**(In the Alternative and on Behalf of the National Class)**

117. Plaintiff repeats and re-alleges the allegations above as if set forth herein.

118. At all relevant times, Defendant was responsible for designing, formulating, testing, manufacturing, inspecting, distributing, labeling, marketing, advertising, and/or selling the Burgers. At all relevant times, it was reasonably foreseeable by Defendant that the use of the Burgers in their intended manner involved substantial risk of injury and was unreasonably dangerous to Plaintiff and the Class as the ultimate users of the Burgers.

119. At all relevant times, Defendant knew or had reason to know of the risk of injury and the resultant harm that the Burgers posed to Plaintiff and Class Members, as the Defect existed at the time of its sale.

120. Defendant as the designer, formulator, manufacturer, tester, distributor, marketer, advertiser, and/or seller of the Burgers, had a duty to warn Plaintiff and the Class of all dangers associated with consumption of the Burgers.

121. At minimum, the duty arose for Defendant to warn consumers that use of the Burgers could result in injury and was unreasonably dangerous.

122. Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Burgers by Plaintiff and the other members of the Class. Retention of those monies under these circumstances is unjust and inequitable because Defendant's representations regarding the quality or value of the Burgers were misleading to consumers, which caused injuries to Plaintiff and the other members of the Class, because they would have not purchased the Burgers had they known the truth or would only have purchased the Burgers for a lower price.

123. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the other members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the other members of the Class for its unjust enrichment, as ordered by the Court.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring that this action is properly maintained as a class action, certifying the proposed Class, appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

(b) Directing that Defendant bear the costs of any notice sent to the Class;

(c) Ordering Defendant to pay restitution to Plaintiff and the Class;

(d) A jury trial and damages according to proof;

(e) Awarding actual damages to Plaintiff and the Class;

(f) Awarding Plaintiff and members of the Class statutory damages, as provided by the applicable state consumer protection statutes invoked above;

(g) Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class;

(h) Civil penalties, prejudgment interest and punitive damages as permitted by law; and

(i) Ordering such other and further relief as the Court deems just and proper.

Dated: October 31, 2024

Respectfully submitted,

**REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese
(Northern District of Illinois
General and Trial Bar No. 90785808)
100 West 93rd Street, 16th Floor
New York, New York 10025
(212) 643-0500
mreese@reeellp.com

**SULTZER & LIPARI, PLLC**
Jason P. Sultzer (to be admitted pro hac vice)
Daniel Markowitz (to be admitted pro hac vice)
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

Jeffrey K. Brown (to be admitted pro hac vice)
**LEEDS BROWN LAW, P.C**.
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
Email: jbrown@leedsbrownlaw.com

Russell M. Busch (to be admitted pro hac vice)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe St., Suite 2100
Chicago, IL 60606
Telephone: (630) 796-0903
Email: rbusch@milberg.com

Nick Suciu III (to be admitted pro hac vice)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313)303-3472
Email: nsuciu@milberg.com

Trenton R. Kashima (to be admitted pro hac vice)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
402 West Broadway St., Suite 1760
San Diego, CA 92101
Telephone: (619) 810-7047
Email: tkashima@milberg.com

*Counsel for Plaintiff and the Class*