**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

—————————————————————— x

Tammy Williams and Trevor Keene, individually   :
and on behalf of all others similarly situated,   :

  :   Case No. 24-cv-11275

       Plaintiffs,   :

v.   :

  :

  :

McDonald's USA, LLC, and Taylor Fresh Foods,   :   **CONSOLIDATED CLASS ACTION**
Inc.   :   **COMPLAINT**

  :

       Defendants.   :   <u>**JURY TRIAL DEMANDED**</u>

  :

  :

—————————————————————— x

Plaintiffs, Tammy Williams and Trevor Keene (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, allege the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on personal knowledge:

<u>**NATURE OF THE ACTION**</u>

1.     This action seeks to remedy the deceptive and misleading business practices of McDonald's USA, LLC ("McDonald's") and Taylor Fresh Foods, Inc. d/b/a Taylor Farms ("Taylor Farms") (McDonald's and Taylor collectively "Defendants") with respect to the manufacturing, marketing, and sale of McDonald's Quarter Pounder Burgers with and without cheese ("Burgers") throughout the states of Nevada and California, and throughout the United States.

1

2.      Defendants improperly, deceptively, and misleadingly labeled and marketed the Burgers to reasonable consumers, like Plaintiffs, by omitting and not disclosing to consumers on their advertising that the Burgers are contaminated with Escherichia coli (E. coli).

3.      As described in further detail below, the Burgers contain Escherichia coli (E. coli)[1], which can cause mild to severe gastrointestinal illness.[2]  The risk of serious infection is particularly concerning for children under the age of 5 years, adults older than 65, and people with weakened immune systems.[3]

4.      Consumers like Plaintiffs trust manufacturers such as Defendants to sell products that are safe and free from known harmful substances, including Escherichia coli (E. coli).

5.      Plaintiffs and those similarly situated (hereinafter "Class Members") certainly expect that the fast-food products they purchase will not contain, or risk containing, any knowingly harmful substances that cause severe disease and even be life-threatening.

6.      Unfortunately for consumers, like Plaintiffs, the fast-food Burgers they purchased contained, or risked containing, Escherichia coli (E. coli).

7.      Defendants are using a marketing and advertising campaign that omits from the advertising that the Burgers contain Escherichia coli (E. coli). Knowing the presence of Escherichia coli (E. coli) is material to reasonable consumers. The presence of Escherichia coli (E. coli) was solely within the possession of Defendants, and consumers could only obtain such information by sending the products off to a laboratory for extensive testing. This omission leads a reasonable consumer to believe they are purchasing a product without a known bacterium when,

---

[1] https://www.cdc.gov/ecoli/outbreaks/e-coli-O157.html
[2] https://www.fda.gov/food/foodborne-pathogens/escherichia-coli-e-coli
[3] *Id.*

in fact, they are purchasing a product that was contaminated with, or risked being contaminated with, Escherichia coli (E. coli).

8.      E. coli is a group of bacteria that can cause infections in your gut (GI tract), urinary tract and other parts of your body.[4]

9.      Some strains can make you sick with watery diarrhea, vomiting and a fever. Shiga toxin-producing E. coli (STEC) is most likely to cause severe illness.[5]

10.     Consumers like Plaintiffs trust manufacturers such as Defendants to sell products that are safe and free from harmful known substances, including Escherichia coli (E. coli).

11.     Plaintiffs and Class Members certainly expect that the fast-food products they purchase will not contain, or risk containing, any knowingly harmful substances that cause disease.

12.     Unfortunately for consumers, like Plaintiffs, the fast-food Burgers they purchased contained, or were at risk of containing, Escherichia coli (E. coli).

13.     McDonald's obtains its slivered onions from Taylor Farms, which it places on the Burgers.  On October 25, 2024, Taylor Farms issued a recall of their onions after finding out that they are or may be contaminated with Escherichia coli (E. coli)(the "Recall").[6]

14.     The class action remedy is superior to Taylor Farms' failed recall in every conceivable fashion.

15.     Defendants are using a marketing and advertising campaign that omit from the advertising that the Burgers contain, or risk containing, Escherichia coli (E. coli).  This omission leads a reasonable consumer to believe they are purchasing a product without a known bacterium

---

[4] https://my.clevelandclinic.org/health/diseases/16638-e-coli-infection
[5] *Id.*
[6] https://web.archive.org/web/20241029020741/https://www.taylorfarms.com/bug-taylor-farms-colorado-foodservice-voluntary-yellow-onion-recall/

such as Escherichia coli (E. coli) when, in fact, they are purchasing a product that was contaminated with, or risked being contaminated with, Escherichia coli (E. coli).

16.     Defendants' marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the advertising itself.   As such, a reasonable consumer reviewing Defendants' advertising reasonably believes that they are purchasing products that are safe for oral ingestion and do not contain any harmful ingredients.   Indeed, consumers expect the advertising to accurately disclose the presence of such bacteria within the Burgers. Thus, reasonable consumers would not think that Defendants are omitting that the Burgers contain, or are at risk of containing, Escherichia coli (E. coli).

17.     Defendants' advertising and marketing campaign is false, deceptive, and misleading because the Burgers do contain, or risk containing, Escherichia coli (E. coli), which is dangerous to one's health and well-being.   Nevertheless, Defendants do not list or mention Escherichia coli (E. coli) anywhere on the Burgers' advertising.

18.     Defendants' misrepresentations and omissions of the safety of the Burgers and what is on the Burgers were material to Plaintiffs and Class Members. Consequently, Plaintiffs and Class Members lost the entire benefit of their bargain when what they received were fast food products contaminated with Escherichia coli (E. coli) that is harmful to consumers' health.

19.     That is because Defendants' Burgers containing, or at risk of containing, Escherichia coli (E. coli), have no value, or at the very least, Defendants were able to charge significantly more for the Burgers than they would have had they not omitted the fact that the Burgers contain (or possibly contain) Escherichia coli (E. coli).

20.     As set forth below, fast-food products that contain (or possibly contain) Escherichia coli (E. coli), such as Defendants' Burgers, are in no way safe for human consumption and are entirely worthless.

21.     Alternatively, Plaintiffs and Class Members paid a price premium for the Burgers based upon Defendants' marketing and advertising campaign, including its false and misleading representations and omissions.  Given that Plaintiffs and Class Members paid a premium for the Burgers, Plaintiffs and Class Members suffered an injury in the amount of the premium paid.

22.     Accordingly, Defendants' conduct violated and continues to violate, *inter alia*, Illinois Consumer Fraud and Deceptive Trade Practices Act, California's Unfair Competition Law, Negligence, Nevada's Deceptive Trade Practices Act, New Mexico's Unfair Practices Act, and Unjust Enrichment.

23.     Plaintiffs bring this action against Defendants on behalf of themselves and Class Members who purchased the Burgers during the applicable statute of limitations period (the "Class Period").

## **FACTUAL BACKGROUND**

24.     McDonald's markets, advertises, and sells fast food products.

25.     Consumers have become increasingly concerned about the effects of ingredients in products that they orally ingest.  Companies, such as Defendants, have capitalized on consumers' desire for fast food products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

26.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as Escherichia coli (E. coli), especially at the

point of sale, and therefore must and do rely on Defendants to truthfully and honestly report what the Burgers contain or are at risk of containing on the Burgers' advertising.

27.     The Burgers' advertising or ingredient list does not identify Escherichia coli (E. coli), nor is there any warning about the inclusion (or even potential inclusion) of Escherichia coli (E. coli) in the Burgers.  This leads reasonable consumers to believe the Burgers do not contain, and are not at risk of containing, Escherichia coli (E. coli);  however, the Burgers contain, or are at risk of containing, Escherichia coli (E. coli).

28.     Defendants are large and sophisticated corporations that are in the business of selling and distributing food products for many years, including the contaminated Burgers.

29.     Defendants are in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of the Burgers and possesses unique and superior knowledge regarding the manufacturing process of the Burgers, the manufacturing process of the ingredients and raw materials the Burgers contain, and the risks associated with those processes, such as the risk of Escherichia coli (E. coli) contamination, as well as the ability to test the Burgers for Escherichia coli (E. coli) contamination prior to releasing the Burgers into the stream of commerce. Such knowledge is solely within the possession of Defendants.

30.     Accordingly, Defendants possess superior knowledge regarding the risks involved in the production of the Burgers. Such knowledge is not readily available to consumers like Plaintiffs and Class Members.

31.     Defendants have a duty to provide consumers, like Plaintiffs and Class Members, with accurate information about the contents of the Burgers.

32.     Therefore, Defendants' false, misleading, and deceptive omissions regarding the Burgers containing Escherichia coli (E. coli) are likely to continue to deceive and mislead

6

reasonable consumers and the public, as they have already deceived and misled Plaintiffs and the Class Members.

33.     Defendants' misrepresentations and omissions were material and intentional because people are concerned with what is in the products that they orally ingest.  Consumers such as Plaintiffs and the Class Members are influenced by the advertising campaigns and the listed ingredients.  Defendants know that if they had not omitted that the Burgers contained Escherichia coli (E. coli), then Plaintiffs and the Class would not have purchased the Burgers, or, at the very least, would not have paid nearly as much for the Burgers.

34.     Consumers rely on marketing and information in making purchasing decisions.

35.     By omitting that the Burgers include Escherichia coli (E. coli) on the advertising of the Burgers throughout the Class Period, Defendants know that those omissions are material to consumers since they would not purchase a product that contained Escherichia coli (E. coli).

36.     Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

37.     Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and the Class Members.

38.     In making the false, misleading, and deceptive representations and omissions described herein, Defendants knew and intended that consumers would pay a premium for a product marketed without Escherichia coli (E. coli) over comparable products not so marketed.

39.     As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representation and omission, Defendants injured Plaintiffs and the Class Members in that they:

   a.  Paid a sum of money for Burgers that were not what Defendants represented;

   b.  Paid a premium price for Burgers that were not what Defendants represented;

   c.  Were deprived of the benefit of the bargain because the Burgers they purchased were different from what Defendants represented;

   d.  Were deprived of the benefit of the bargain because the Burgers they purchased had less value than what Defendants represented; and

   e.  Were denied the benefit of the properties of the Burgers Defendants promised.

40.     Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiffs and the Class Members would not have been willing to pay the same amount for the Burgers they purchased and/or Plaintiff and the Class Members would not have been willing to purchase the Burgers.

41.     Plaintiffs and the Class Members paid for Burgers that do not contain Escherichia coli (E. coli).  Since the Burgers do indeed or possibly contain Escherichia coli (E. coli), the Burgers Plaintiff and the Class Members received were worth less than the Burgers for which they paid.

42.     Plaintiffs and the Class Members all paid money for the Burgers; however, Plaintiffs and the Class Members did not obtain the full value of the advertised Burgers due to Defendants' misrepresentations and omissions.  Plaintiffs and the Class Members purchased, purchased more of, and/or paid more for, the Burgers than they would have had they known the

truth about the Burgers.  Consequently, Plaintiffs and the Class Members have suffered injury in

fact and lost money as a result of Defendant's wrongful conduct.

43.     Plaintiffs and Class Members saw the Burgers' advertising prior to purchasing the

Burgers.  Had Plaintiffs and Class Members known the truth about the Burgers, i.e., that they do

or possibly contain Escherichia coli (E. coli), they would not have been willing to purchase them

at any price, or, at minimum would have paid less for them.

44.     Additionally, Plaintiffs and the Class Members seek damages associated with their

personal injuries, including medical costs as well as pain and suffering.

## JURISDICTION AND VENUE

45.     This Court has subject jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) of

the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative Class Member, (ii)

the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii)

there is minimal diversity because Plaintiffs and Defendants are citizens of different states.

46.     The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as all

Defendants are citizens of different states than Plaintiffs, and there is more than $75,000 in controversy.

47.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant

to 28 U.S.C. § 1367.

48.     This Court has personal jurisdiction over Defendant McDonald's USA, LLC

because McDonald's is headquartered in Illinois and has substantial contacts with Illinois.

Defendants also receive substantial benefits and income from Illinois.

49.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because

McDonald's would be subject to personal jurisdiction in this District if this District were a separate

state, given that McDonald's is headquartered in the Northern District of Illinois. Additionally, a

substantial part of the events giving rise to the claims occurred in the State of Illinois.

## PARTIES

**Plaintiff Williams**

50.     Plaintiff Tammy Williams is a citizen and resident of Lyon County, Nevada. During the applicable statute of limitations period, Plaintiff Williams purchased and ingested the Burgers that contained Escherichia coli (E. coli), including the Burgers that were subject to the recall. More specifically, during the Class Period on October 21, 2024, Plaintiff Williams purchased the Burger in Lyon County, Nevada at a McDonald's retail store.  Prior to purchasing the Burger, Plaintiff Williams saw the advertising of the Burgers.  Three days later, Plaintiff Williams felt sick and sought medical attention, where Plaintiff learned that Plaintiff tested positive for E. coli.

51.     Plaintiff Trevor Keene is a resident and citizen of Hobbs, New Mexico. During the applicable statute of limitations period, Plaintiff purchased and ingested a McDonald's Quarter Pounder, a burger that was subject to the recall, for himself on or about October 21, 2024. More specifically, Plaintiff Keene purchased the Burger in Hobbs, New Mexico at a McDonald's retail location. Soon after his purchase, he began experiencing many of the symptoms associated with E. coli infection. Prior to purchasing the Burger, Plaintiff Keene saw advertising for the Burger in the McDonald's app, and/or in online advertising.

52.     Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Burgers, Plaintiffs would not have been willing to purchase the Burgers or pay as much for the Burgers.  Plaintiffs purchased, purchased more of, and/or paid more for, the Burgers than they would have had they known the truth about the Burgers.  The Burgers Plaintiffs received were worthless because they possibly contained Escherichia coli (E. coli).  Alternatively, Plaintiffs paid a price premium based on Defendant's false, misleading, and

deceptive misrepresentations and omissions. Accordingly, Plaintiffs were injured in fact and lost money as a result of Defendant's improper conduct.

53. Plaintiffs remain in the market for Burgers and continue to shop at McDonald's. If the Burgers did not contain, or risk containing, E. Coli, or if the advertising properly represented that the Burgers contain, or risk containing, E. Coli and were sold at a commensurate price, Plaintiffs would purchase the Burgers again in the immediate future. However, at present, Plaintiffs cannot trust that the Burgers do not contain, or risk containing, E. Coli. If the Court were to issue an injunction ordering Defendant to comply with the state and federal laws, and prohibiting Defendants' use of the deceptive practices discussed herein, Plaintiffs would likely purchase the Burgers again in the near future.

**Defendant McDonald's**

54. Defendant, McDonald's USA, LLC. is an Illinois company with its principal place of business in Chicago, Illinois.

55. McDonald's markets, advertises, and distributes the Burgers throughout the United States. McDonald's created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Burgers.

**Defendant Taylor Farms**

56. Defendant, Taylor Fresh Foods, Inc. is a Delaware company with its principal place of business in Salinas, California.

57. Taylor Fresh Foods, Inc. does business as Taylor Farms.

58. Taylor Fresh Foods, Inc. manufactures and sells the onions on the Burgers that contain E. Coli.

## CLASS ALLEGATIONS

59.     Plaintiffs bring this matter on behalf of themselves and those similarly situated.  As detailed at length in this Complaint, Defendants orchestrated deceptive marketing and labeling practices.  Defendants' customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

60.     The Class is defined as all consumers who purchased the Burgers anywhere in the United States during the Class Period.

61.     Plaintiffs also seek certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Burgers in the state of Nevada and New Mexico at any time during the Class Period (the "Nevada Subclass" and /or the "New Mexico Subclass").

62.     The Class, Nevada Subclass and New Mexico Subclass are referred to collectively throughout the Complaint as the Class.

63.     Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise. Plaintiffs also reserves the right to create additional subclasses.

64.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

65.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiffs  believe that there are thousands of consumers in the Class, Nevada Class and New Mexico Class who are Class Members, as described above, who have been damaged by Defendants' deceptive and misleading practices.

66.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

  a.   Whether Defendants were responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Burgers;

  b.   Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Burgers;

  c.   Whether Defendants made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Burgers;

  d.   Whether Defendants' false and misleading statements and omissions concerning its Burgers were likely to deceive the public; and

  e.   Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

67.     <u>Typicality</u>: Plaintiffs are members of the Class. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Burgers. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

68.     <u>Adequacy</u>: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seek to represent, their consumer fraud claims are common to all members of the Class, they have a strong interest in vindicating their rights, they have retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

69.     Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

70.     Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.  When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

f.   This class action will assure uniformity of decisions among Class Members;

g.   The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.   Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i.   It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendants' uniform false advertising to purchase its Burgers.

71.   Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### COUNT I
### Violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act
### 815 ILCS 505/1, et seq.
### (Plaintiffs on Behalf of the National Class)

72.   Plaintiffs repeat and re-allege the allegations above as if set forth herein.

73.   Plaintiffs and other Class Members are persons within the context of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1(c).

74.   Defendants are persons within the context of the ICFA, 815 ILCS 505/1(c).

75.   At all times relevant hereto, Defendants were engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

15

76. Plaintiffs and the proposed Class are "consumers" who purchased the Burgers for personal, family or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

77. The ICFA does not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer of this State or the United States." 815 ILCS 505/10b(1).

78. The Food Drug and Cosmetic Act ("FDCA") prohibits introduction into interstate commerce "of any food, drug, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a).

79. As the Burger is adulterated and misbranded, the FDCA specifically prohibits their introduction into interstate commerce, and thus, actions under the ICFA related to the Burgers being adulterated and misbranded are not barred by 815 ILCS 505/10b(1).

80. The ICFA prohibits engaging in any "unfair or deceptive acts or practices ... in the conduct of any trade or commerce...." ICFA, 815 ILCS 505/2.

81. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2. 215. Plaintiffs and the other Class Members reasonably relied upon Defendant's representation that the Burgers were safe for consumption due to Defendant's material representations and omissions.

82. McDonald's corporate headquarters and manufacturing plant are located within the State of Illinois. Accordingly, Defendants' conduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA 505/1, *et seq.*

83.    Defendants violated the ICFA by representing that the Burgers have characteristics or benefits that they do not have. 815 ILCS § 505/2; 815 ILCS § 510/2(7).

84.    Defendants advertised the Burgers with intent not to sell it as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

85.    Defendants engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or of misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

86.    Prior to placing the Burgers into the stream of commerce and into the hands of consumers to drink and ingest, Defendants knew or should have known that the Burgers contained Escherichia coli (E. coli), but Defendants failed to properly test check the Burgers for quality and safety.

87.    Defendants intended that Plaintiffs and each of the other Class Members would reasonably rely upon the misrepresentations, misleading characterizations, warranties, and material omissions concerning the true nature of the Burgers.

88.    Given Defendants' position as leaders in the fast food industry, Plaintiffs and the Class Members trusted and relied on Defendants' representations and omissions regarding the presence of Escherichia coli (E. coli) in the Burgers.

89.    Defendants' misrepresentations, concealment, omissions and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiffs and each of the other Class Members to be deceived about the true nature of the Burgers.

90.    Plaintiffs and Class Members have been damaged as a proximate result of Defendants' violations of the ICFA and have suffered damages as a direct and proximate result of purchasing the Burgers.

91.     As a direct and proximate result of Defendants' violations of the ICFA, as set forth above, Plaintiffs and the Class Members have suffered ascertainable losses of money caused by Defendants' misrepresentations and material omissions regarding the presence of Escherichia coli (E. coli) in the Burgers.

92.     Had they been aware of the true nature of the Burgers, Plaintiffs and Class Members either would have paid less for the Burgers or would not have purchased them at all.

93.     Based on Defendants' unfair and/or deceptive acts or practices, Plaintiffs and the Class Members are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs and attorney's fees, under 815 ILCS 505/10a.

### COUNT II
### Violation of California Unfair Competition Law ("UCL")
### (Cal. Bus. & Prof. Code §§ 17200, et seq.)
### (Plaintiffs on Behalf of the National Class)

94.     Plaintiffs repeat and re-allege the allegations above as if set forth herein.

95.     This cause of action is brought only against Defendant Taylor Farms.

96.     California Business & Professions Code, sections 17200, et seq. (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

97.     The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

98.     Food labeling in the United States is regulated by the FDCA.

99.     "California's analog to the federal …(FDCA) is known as the Sherman Law. It incorporates by reference all federal food labeling standards." *Davidson v. Sprout Foods, Inc.*¸ 106

18

F.4th 842, 844 (9th Cir. 2024).

100.    The FDCA prohibits introduction into interstate commerce "of any food, drug, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a).

101.    California, through the Sherman Law, has adopted this same standard. *See* Cal. Health & Safety Code § 110660(a).

102.    By selling onions via the Burgers that were "adulterated or misbranded", Taylor Farms violated the Sherman Law. This violation is enforceable via the unlawful prong of UCL.

103.    Taylor Farms knew or should have known of its unlawful conduct.

104.    Taylor Farms had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Taylor Farms could have refrained from selling adulterated or misbranded food.

105.    All of the conduct alleged herein occurs and continues to occur in Taylor Farms' business. Taylor Farms' wrongful conduct is part of a pattern or generalized course of conduct.

106.    Pursuant to Business and Professions Code Section 17203, Plaintiffs and the Class Members seek an order of this Court enjoining Taylor Farms from continuing to engage, use, or employ its practice of selling adulterated or misbranded food.

107.    Plaintiffs and the Class Members have suffered injury in fact and have lost money as a result of Taylor Farms' unlawful conduct.

108.    Plaintiffs and the Class Members seek restitution of ill-gotten gains pursuant to the UCL.

19

**COUNT III**
**Negligence**
**(Plaintiffs on Behalf of the National Class and the Subclasses)**

109.    Plaintiffs repeat and re-allege the allegations above as if set forth herein.

110.    At all times relevant, Defendants had a duty to provide Plaintiffs and the other members of the Nationwide Class with safe Burgers.

111.    Specifically, Defendants had a duty to provide the Burgers as safe for human consumption to their potential consumers.

112.    Defendants breached this duty by failing to ensure the safety of the Burgers.

113.    As a result of Defendants' breach, Plaintiffs and the other Class Members were harmed in that they suffered economic injury and lost the benefit of the bargain relating to their purchase price of the Burgers.

114.    Defendants' breach of their duty caused Plaintiffs' and the other Class Members' damages both proximately and factually.

115.    Had Defendants properly designed, manufactured, or implemented a system in which the Burgers had been properly examined and tested prior to sale, Plaintiffs and the other Class Members would not have been injured and/or damaged as they would not have purchased contaminated Burgers or suffered personal injuries.

**COUNT IV**
**Violation of Nevada's Deceptive Trade Practices Act ("NTPA")**
**(Nev. Rev. Stat. § 598.0903, et seq.)**
**(Plaintiff Williams on Behalf of the Nevada Subclass)**

116.    Plaintiffs repeat and re-allege the allegations above as if set forth herein.

117.    Plaintiff Williams brings this claim on behalf of the Nevada Subclass.

118.    Defendants violated the NTPA by representing that the Burgers have characteristics or benefits that they do not have. Nev. Rev. Stat. § 598.092(5).

119. Defendants violated the NTPA by representing that the Burgers are of a particular standard, quality, or grade that they do not have. Nev. Rev. Stat. § 598.092(7).

120. Defendants advertised the Burgers with intent not to sell it as advertised, in violation of Nev. Rev. Stat. § 598.092(9).

121. Defendants violated the NTPA by selling adulterated or misbranded Burgers in violation of the FDCA. Nev. Rev. Stat. § 598.023(1)(c).

122. Defendants violated the NTPA by failing disclose the presence, or potential presence, of E.Coli. Nev. Rev. Stat. § 598.023(1)(b).

123. Defendants' sale of the Burgers without disclosing the presence, or potential presence, of E.Coli constitutes an unconscionable practice in violation of the NTPA because Defendants took advantage of Plaintiff Williams' and the Nevada Subclass' lack of knowledge of the E.Coli and/or ability to test the Burgers before purchasing them. Nev. Rev. Stat. §§ 598.023(1)(e), (2)(b)(1).

124. As a result of Defendant's deceptive trade practices, Plaintiff Williams and the Nevada Subclass were damaged and required to retain counsel to prosecute their claims.

125. Accordingly, Plaintiff Williams and the Nevada Subclass seek their actual and consequential damages, punitive damages, an order enjoining Defendants' deceptive acts or practices, costs of Court, attorney's fees, and all other appropriate and available remedies under the Nevada Deceptive Trade Practices Act. Nev. Rev. Stat. § 41.600.

## COUNT V
### Violation of New Mexico's Unfair Practices Act ("UPA")
### (N.M. Stat. Ann. §§ 57-12-1, et seq.)
### (Plaintiff Keene on Behalf of the New Mexico Subclass)

126. By reason of the conduct alleged herein, defendants have violated N.M. Stat. Ann. §§ 57-12-1, et seq.

127. Plaintiff Keene brings this claim on behalf of the New Mexico Subclass.

128. Defendants violated the UPA by representing that the Burgers have characteristics or benefits that they do not have. N.M. Stat. Ann. § 57-12-2(D)(5).

129. Defendants violated the NTPA by representing that the Burgers are of a particular standard, quality, or grade that they do not have. N.M. Stat. Ann. § 57-12-2(D)(7).

130. Defendants violated the NTPA by failing disclose the presence, or potential presence, of E.Coli. N.M. Stat. Ann. § 57-12-2(D)(14).

131. Defendants violated the NTPA by failing deliever the quality of goods contracted for. N.M. Stat. Ann. § 57-12-2(D)(17).

132. Defendants' sale of the Burgers without disclosing the presence, or potential presence, of E.Coli constitutes an unconscionable practice in violation of the NTPA because Defendants took advantage of Plaintiff Keene's and the New Mexico Subclass' lack of knowledge of the E.Coli and/or ability to test the Burgers before purchasing them. N.M. Stat. Ann. § 57-12-2(E)(1).

133. Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of New Mexico.

134. Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to plaintiffs and members of the New Mexico Subclass.

135. Defendants' unlawful conduct substantially affected New Mexico's trade and commerce.

136. On information and belief, Defendants' conduct was willful.

137. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff Keene and the members of the New Mexico Subclass have been injured in their property and are threatened with further injury.

138. By reason of the foregoing, plaintiffs and members of the New Mexico Class are entitled to seek all forms of relief, including actual damages or up to $300 per violation, whichever is greater, plus reasonable attorney's fees under N.M. Stat. Ann. §§ 57-12-10.

**COUNT VI**
**Unjust Enrichment**
**(In the Alternative and on Behalf of the National Class and the Subclasses)**

139. Plaintiffs repeat and re-allege the allegations above as if set forth herein.

140. At all relevant times, Defendants were responsible for designing, formulating, testing, manufacturing, inspecting, distributing, labeling, marketing, advertising, and/or selling the Burgers. At all relevant times, it was reasonably foreseeable by Defendants that the use of the Burgers in their intended manner involved substantial risk of injury and was unreasonably dangerous to Plaintiffs and the Class as the ultimate users of the Burgers.

141. At all relevant times, Defendants knew or had reason to know of the risk of injury and the resultant harm that the Burgers posed to Plaintiffs and Class Members, as the Defect existed at the time of its sale.

142. Defendants as the designer, formulator, manufacturer, tester, distributor, marketer, advertiser, and/or seller of the Burgers, had a duty to warn Plaintiffs and the Class of all dangers associated with consumption of the Burgers.

143.    At minimum, the duty arose for Defendants to warn consumers that use of the Burgers could result in injury and was unreasonably dangerous.

144.    Defendants have been unjustly enriched in retaining the revenues derived from the purchases of the Burgers by Plaintiffs and the other members of the Class. Retention of those monies under these circumstances is unjust and inequitable because Defendants' representations and omissions regarding the quality or value of the Burgers were misleading to consumers, which caused injuries to Plaintiffs and the other members of the Class, because they would have not purchased the Burgers had they known the truth or would only have purchased the Burgers for a lower price.

145.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and the other members of the Class is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the other members of the Class for their unjust enrichment, as ordered by the Court.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, prays for judgment as follows:

(a) Declaring that this action is properly maintained as a class action, certifying the proposed Class, appointing Plaintiffs as Class Representatives and appointing Plaintiffs' counsel as Class Counsel;

(b) Declaring that Defendants are financially responsible for notifying the Class members of the pendency of this suit;

(c) Directing that Defendant bear the costs of any notice sent to the Class;

(d) Ordering Defendant to pay restitution to Plaintiffs and the Class;

(e) A jury trial and damages according to proof;

(f) Awarding actual, general, special, incidental, punitive, and consequential damages to Plaintiffs and the Class;

(g) Awarding Plaintiffs and members of the Class statutory damages, as provided by the applicable state consumer protection statutes invoked above;

(h) Awarding attorneys' fees and litigation costs to Plaintiffs and members of the Class;

(i) Civil penalties, prejudgment interest and punitive damages as permitted by law; and

(j) Ordering such other and further relief as the Court deems just and proper.


Dated: August 4, 2025                              Respectfully submitted,

**REESE LLP**

*/s/ Charles D. Moore*
Charles D. Moore
(Northern District of Illinois
General Bar No. 5881024)
121 N. Washington Ave., 2nd Floor
Minneapolis, Minnesota 55401
(212) 643-0500
cmoore@reesellp.com

Michael R. Reese
(Northern District of Illinois
General and Trial Bar No. 90785808)
100 West 93rd Street, 16th Floor
New York, New York 10025
(212) 643-0500
mreese@reeellp.com

Jason P. Sultzer (to be admitted pro hac vice)
Daniel Markowitz (to be admitted pro hac vice)
**SULTZER & LIPARI, PLLC**
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

Jeffrey K. Brown
**LEEDS BROWN LAW, P.C**.
(Northern District of Illinois
General Bar No. 2787364)
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
Email: jbrown@leedsbrownlaw.com

Russell M. Busch (to be admitted pro hac vice)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe St., Suite 2100
Chicago, IL 60606
Telephone: (630) 796-0903
Email: rbusch@milberg.com

Nick Suciu III (to be admitted pro hac vice)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313)303-3472
Email: nsuciu@milberg.com

Trenton R. Kashima (to be admitted pro hac vice)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
402 West Broadway St., Suite 1760
San Diego, CA 92101
Telephone: (619) 810-7047
Email: tkashima@milberg.com

Paul J. Doolittle (to be admitted pro hac vice)
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: paul.doolittle@poulinwilley.com
        cmad@poulinwilley.com

*Counsel for Plaintiff and the Class*

26